**FILED**

**DISTRICT COURT OF THE DISTRICT OF COLUMBIA**

DEC 31 2009

**CIVIL DIVISION**

Clerk, U.S. District and
Bankruptcy Courts

Joseph Wade
52 Milmarson Pl., N.W.,
Washington, D.C., 20011
202-256-9408
        Plaintiff,

v.

CAPITAL PARK APARTMENTS LTD PRTNSHIP
222 Smallwood Village Center
St. Charles, Maryland  20602
Serve on Agent:
CT Corporation System
1015 15th St., N.W., #1000
Washington, D.C., 20005

And

American Rental Management Company
222 Smallwood Village Center
St. Charles, Maryland  20602
Serve on Agent:
National Registered Agents, Inc.
1090 Vermont Ave. N.W. #910, Washington, D.C. 20005

And

AIM PARTNERSHIP No. 1, an Illinois ltd Partnership
Serve on Agent– Prentice Hall Corp. System, Inc.
1090 Vermont Ave, N.W.
Washington, D.C.  20005)

        Defendants

Case: 1:09-cv-02454
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 12/31/2009
Description: Pro Se Gen. Civil

*JURY ACTION*

COMPLAINT

      Comes now, the Plaintiff, Joseph Wade, sues Capital Park Apartments Limited

Partnership, American Management Rental Company (ARMC) ; and  AIM Partnership

      No. 1.   In support of this Complaint, Plaintiff states the following:

1

## STATEMENT OF FACTS

1. Joe Wade, Plaintiff, was a twenty-year tenant, in good standing of housing owned and operated by American Management Rental Company. He was known in the building as a kind and gentle neighbor to all and was an active member and officer in the building's tenant association, "The New Capital Park Towers Tenants Association, S.W. Washington, D.C."

2. Plaintiff earned his living as a freelance studio T.V. technician (ENG). His contracts over the years were many including but not limited to : Al Jazeera International (USA) Inc.; CNN and other T.V. networks. His reputation was a stellar one in his apartment community and his employment community.

3. Plaintiff actively participated in various endeavors along with tenant association which complained to D.C. Rental Housing (DCRA) and various city authorities about the lack of repairs in the building, including lack of code compliance of their smoke detectors; fire hazards; toilet showers and sinks in disrepair; elevators that didn't work at all; mice, roaches and other pests over running in his apartment complex and his home.

4. Plaintiff also complained about these housing violations caused by Defendant to his landlord. With limited success, Plaintiff also had to file his own complaint in DCRA.

5. Defendants, by and thorough their agent/manager, Carmel Leonard, stole and deposited Plaintiff's check in the amount of $5,102.50 (five thousand one hundred two dollars and fifty cents) which was issued on or about 02/05/2008.

6. Plaintiff was expecting to receive a $5,102.50 check from Al Jazeera for the work that he has provided. Plaintiff checked his mailbox daily and with the front desk staff members about whether they have seen his check. Ms. Carmel Leonard reported that she has never seen Plaintiff's check. Plaintiff asked checked with Al Jazeera to see whether they sent the check out to him and they did.

7. After waiting for weeks, Plaintiff reported and documented this theft to the D.C. Postal authorities when he learned that his check had been wrongfully purloined by his landlord from his home address, and deposited in the account of his landlord, Defendants, without his knowledge, or endorsement. The Postal inspection Case is #11135945 which he filed seeking restitution. This case languished for months without any action by postal authorities. Defendants should be fully aware of Plaintiff's report to federal authorities.

8. Due to Defendants tried to deposit Plaintiff's check which was sent from Al Jazzier and Plaintiff reported to Al Jazzier the check was stolen at the same time of Defendants' deposit, Al Jazzier would not hire Plaintiff any longer because they believed Plaintiff conspired with a third party who tried to cheat on Al Jazzier and "double dipping". It took Plaintiff months to rectify this matter, and he fell behind on all his monthly bills, damaging his credits, putting his home in jeopardy and sullying his good reputation with all his potential employment opportunities, especially Al Jazzier.

9. Plaintiff believes that the misappropriation by the defendants was the main cause of these events leading to his ultimate spiral downward, financially, emotionally and physically and impairing his ability to acquire any employment. During this period,

Plaintiff was unable to sleep, and was isolated from his peers, friends and family members.

10. Plaintiff believes that Defendant's theft of his check from Al Jazzier tarnishes his reputation and damaged his further employment opportunities in this small T.V. E.N.G. community in Washington D.C. metropolitan area.

11. Defendants eventually initiated a Landlord Tenant case in the D.C. Superior Court. On November 2, 2009, Plaintiff was evicted by D.C. Superior Court's Marshall Service even if his name was not on the eviction list on that date originally. Plaintiff did not have adequate time to pack his belongings and suffered thefts from the landlord/ management during the eviction process.

## COUNT ONE – GROSS NEGLIGENCE

12. Count I of this Complaint adopts and incorporates by reference all allegations set forth above.

13. Plaintiff claims that the Defendants were negligent in failing to properly maintain one of the common areas, namely mailroom area; Defendant's negligence caused Plaintiff's damages. Plaintiff's check were not properly placed in the tenant mailbox but was laid in plain view of a public area. The check fell into Defendants' account without any endorsement from Plaintiff.

14. Defendants' have a duty to maintain the common areas of the building in a reasonable safe condition for all the tenants and other persons lawfully on the premise. They failed

to do so.  Plaintiff believed that Defendants' own agent/manager, Carmel Leanord, who stole the check for the landlord.

15. Plaintiff believes that the Defendants or one of the defendants' employees caused an unsafe and dangerous condition of tenants' personal property, including but not limited to the check was stolen from the mailroom.  Defendants and/or its agents should have complete control of the mailroom, but the check would lay in the plain view for any person who can have access to the mailroom to take it away.

16. Defendants should have known of this condition and prevent it.  They failed to exercise ordinary care to make sure the their employees will not steal from the tenants at all.

Plaintiff demands ONE Million dollars ($1,000,000.00) for this count.

## COUNT TWO- NEGLIGENCE

## LIABILITY OF LANDLORD FOR CRIMINAL CONDUCT OF THRID PARTIES

17. Count two of this complaint adopts and incorporates by reference all allegations set forth above.

18. Defendants, the landlord of a multiple-units apartment building and management company, owe the tenants and Plaintiff, and other tenants/invitees lawfully on the property a duty of care to provide protection against foreseeable criminal acts of third parties.  By failing to fulfill this duty, Defendants are negligent.

19. Plaintiff alleges that the Defendants acted negligently toward Plaintiff, considering the likelihood that criminal acts could occur in the negligently maintained mailroom, a common area of the building, the seriousness of harm likely to result from criminal acts of mail fraud, and the minimal burden that would be necessary to eliminate or reduce the risk of harm to Plaintiff's mail, and finances.

20. Plaintiff also suffers inconvenience, mental anguish, discomfort, mental abuse, was the direct result of the negligence of Defendants and their employees. Defendants failed to adequately respond to concerns raised by Plaintiff about his stolen mail and his check by contractor as cited above.

21. As a direct result of the negligence of and breach of the duty owed by Defendants to the Plaintiff, he will continue to suffer damages, including but not limited to mental anguish, embarrassment, humiliation, emotional distress; pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, freight, embarrassment, financial loss now and the loss of future earnings by his T.V. contractors/employers which he has developed for employment over the past thirty years. Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) for this count.

## COUNT THREE- FRAUD

## FRAUDULENT MISREPRESENTATION MADE THROUGH THIRD PERSON

22. Count three of this complaint adopts and incorporates by reference all allegations set froth above.

23. Defendants, as the maker of this fraudulent misrepresentation, is liable to the Plaintiff or the wrongful taking and deposit of Plaintiff's check no. #7452, in the amount of $5,102.50 (five thousand one hundred two dollars and fifty cents) regardless of whether they made the misrepresentation any unspecified third party directly or conveyed the information through some other person, banker or other means. Defendants are liable for fraud by means of deception through innocent intermediary, their bank. This intentional misrepresentation or deceit involved the intent to deceive to any unspecified third party by the defendants.

24. Defendants, as a landlord, shall properly supervise staff members and manage apartment complex well including the mail area of the building. Defendants were careless in the management of his property leased to tenant/Plaintiff. Defendants knew or should have known that the Plaintiff's check was stolen and deliberately deposited in their bank account. Defendants knew or should have known that these representations were false, and these representations were made with reckless disregard for the truth and knowledge of the falsity of their own bank records, and can be imputed to the Defendants. Their actions were done to deceive Plaintiff and Al Jazeera or any unspecified third party.

25. Defendants owed the duty to prevent the theft of Plaintiff's mail/check and diverting these funds to Defendants' account. Defendants were responsible to assure the proper management operation of the apartment complex/home of the plaintiff.

26. Defendants, by their fraudulent inducement, guile, surreptitiousness and other forms of deceit, stole plaintiff's check and wrongfully deposited said check in their own bank account for their own benefit. The Defendants made these false representations for the

purpose stealing from the plaintiff. The Plaintiff relied with justification upon the misrepresentations that his check was indeed lost and therefore, looked suspicions to Al Jazeera and any future employer when he began efforts to trace, and replace this check that had already been converted to their own possession by the Defendants.

27. The Plaintiff therefore suffered damages as a direct result of the reliance upon the misrepresentation.

28. Defendants breach its fiduciary duty intentionally, with malice, and/or with reckless disregard for Plaintiff's right by ignoring the property management of the apartment complex/home of the plaintiff. In breaching of his fiduciary duty, Defendants knowingly made intentional misrepresentations, and this deceit incurred damages for Plaintiff.

29. Defendants knew and should have known that their stealing of the check would create an illusion and tarnish the reputation of Plaintiff to the effect that Plaintiff concocted with a third party and report the lost check to Al Jazeera. Al Jazeera informed Plaintiff that "The check has been deposited, you have to file a claim to admit that the check was stolen and you had nothing to do with the stolen check." Plaintiff had to submit a notarized statement and file a police report per Al Azeri's instruction. Even with Plaintiff's submission of all the paper work, Al Jazeera will not trust Plaintiff due to "the stolen check incident." Through Al Jazeera's own employees, Al Jazeera accused Plaintiff conspiring with a third party to stage such incident. Defendants and/or its agents stealing of Plaintiff's check, made Plaintiff believed that the check was stolen by a total irrelevant third party, reported to Al Jazeera of stolen check, cast doubts and handicapped Plaintiff's all the future job opportunities by Al Jazeera after they found the check was

deposited by someone. It would take the Plaintiff years to recover from this deliberate fraud against him and his employment interest. Plaintiff had dedicated his life as a T.V. E.N.G. contractor and willing to travel abroad, and his employment suffered enormously as a result of Defendants' fraudulent activities.

30. The Defendants' deceit and delayed non-disclosure were specific misrepresentations that involved concealment of material facts – the conversion of his paycheck from his employer/contractor – to their own bank account without the knowledge or permission of the Plaintiff. Defendants had a duty to disclose this theft to the plaintiff and rectify the mistake to any unspecified third party. Defendants failed to disclose this material fact from the beginning and did not take corrective actions immediately to remedy the situations. Plaintiff demands ONE MILLION dollars ($1,000,000.00) for this count.

## COUNT FOUR-THEFT/ CONVERSION

31. Count four of this complaint adopts and incorporates by reference all allegations set forth above.

32. Defendants wrongfully stole Plaintiff's paycheck no. # 7452 issued by Al Jazeera International Inc. and converted this check to their bank account without the endorsement, approval or knowledge of the Plaintiff.

33. Defendants continued to deny their participation in this theft and caused Plaintiff to vigorously purse his check form his contractor/employer causing him great humiliation and embarrassment, mental anguish, financial loss and loss of future earnings.

34. Even on the day of eviction, the Marshall only brought down 2/3 of Plaintiff's belongings. When Plaintiff tried to retrieve the other 1/3 of belongings, Management would not allow him to go into his apartment to retrieve any. After more than one hour after the completion of eviction, Plaintiff inquired Ms. Murphy, manager of the property, of his fishing rods and other items. Ms. Murphy asked a maintenance member to bring down his fishing rods. She refused to bring other items, i.e., kitchen and bathroom items. Instead, Ms. Murphy told Plaintiff to leave the premise and told Plaintiff that his belongings left in the apartment would be considered trash. Plaintiff believes that the replacement of his lost belongings are worth at least $50,000.00. Plaintiff demands $1,000,000.00 (one million dollars) for this count.

### **COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

35. Count Five of this complaint adopts and incorporates by reference all allegations set forth above.

36. After the theft of his paycheck no. # 7452, during his tenancy under the Defendants, Plaintiff was not provided proper and reasonable services at his home. He suffered chronic stress, lack of sleep, his credit was damaged, and he faced job loss, worry over future earnings lost because of Defendants slanderous statements and/or irresponsible behavior against him to his contractor/employer, and lack of financial means because of their conduct. The stealing conduct was perpetuated by the agents, servants, and employees of Defendant and within the scope of their employment. Defendant is responsible for all of the acts committed by its agents within the scope of their employment.

37. Defendants conduct was intentional, reckless, and deliberately disregard of a high degree of probability that emotional distress would result to the Plaintiff. The conduct of Defendants' agents was malicious, willful and intentional.

38. As a result of the aforesaid conduct and actions, the plaintiff has suffered and will continue to suffer severe and extreme emotional distress.

Plaintiff demands One Million dollars ($1,000,000.00) as compensation to this count.

## COUNT SIX- DEFAMATION

39. Defendants made false and defamatory statements, spurious attacks, about the Plaintiff's character and knowledge about his paycheck no. 7452 from Al Jazeera International Inc.

40. The false statements and/or delayed explanation and/or no explanation provided by Defendants with regard to the Plaintiff's check to his contractor/employer, and other parties, were not correct. Defendants should know that their false statements or omission to inform Plaintiff's check whereabouts created tremendous financial hardship to Plaintiff.

41. As a result of the false and defamatory statements made by Defendants about the Plaintiff, the character and reputation of Plaintiff were harmed, his standing and reputation in the T.V. E.N.G. community of Washington, D.C. were impaired, and he suffered mental anguish, personal humiliation and job loss.

42. Defendants had a duty of care to Plaintiff. This duty required the transmittal of accurate information from Defendants to Plaintiff's contractor/employer in a timely manner. The prolonged no-statements or even denial by Defendants and their agents and employees created irrevocable damages to Plaintiff.

43. Defendants knew and should have known that Plaintiff's contractor/employer would probably rely upon and was in fact, relying upon Defendants' negligent statement and/or omission, and Plaintiff would incur damage. Since Plaintiff's position required him to be of good character and trustworthy, these actions of Defendant were especially damaging to his career.

44. As a direct and proximate result of the false and defamatory statements by Defendants, Plaintiff Wade suffered a loss of prospective income that he would have earned in the future.

As a result of the conduct of Defendants and their negligent misrepresentations about plaintiff, plaintiff suffered damages. Plaintiff demands $1,000,000.00 (one million dollars) for this count.

## COUNT SEVEN- BREACH OF CONTRACT – LEASE

45.   Count Seven of this complaint adopts and incorporates by reference all allegations set forth above.

46.   Plaintiff executed a lease for the premises located at 301 G St S.W., Unit # 525 and was a resident tenant of the Defendant for twenty-six years. Plaintiff had a right under the D.C. Landlord tenant statutes to the quiet enjoyment of his home/apartment

along with his right to his privacy in his home; and the right to his U.S. postal mail delivered to him safely in a timely manner. His check should not have been wrongfully deposited in his landlord's bank account without his approval, or endorsement.

Plaintiff demands ONE Million ($1,000,000.00) for this count.

## COUNT EIGHT– VIOLATION OF CIVIL RIGHTS 42 U.S.C. 1983 AND 1988

47. Count Nine of this complaint adopts and incorporates by reference all allegations set forth above.

## JURISDICTION AND VENUE

48. This action is brought pursuant to his Constitution of the United States, particularly 42 U.S.C. §§ 1983 and 1988.

49. The events described herein took place in Washington, D.C., hence venue is proper with the United States District court of the District of Columbia.

50. Plaintiff brings this action alleging Defendants violated Plaintiff's substantial due process rights.

51. Defendants, and their agents, servants, and or employees operated to deprive Plaintiff of his rights, privileges and immunities under the U.S. Constitution, Laws and Statutes of the United States. Defendants acted with deliberate and conscious indifference in their decision to violate Plaintiff's constitutional rights in that it was clearly unreasonable. Defendants had a duty to protect Plaintiff's home and mail and Defendants affirmatively

placed him in a dangerous position. Defendants knew or should have known that they were exposing Plaintiff to a substantial risk denying him his mail and monies due him from his contractor/employer. Defendants ignored all the laws of D.C. housing and federal laws.

52. Defendants actions proximately cause Plaintiff to be injured. As a result of Defendants' conduct, the plaintiff suffered from mental anguish and emotional distress.

53. The treatment of plaintiff's by the Defendants was willful, wanton and malicious and in conscious disregard of Plaintiff's constitutional rights.

54. Plaintiff, as a citizen of the United States has liberty rights, and a right to privacy to be protected while in his home/apartment, the home managed by Defendant/landlord.

55. Specifically, Plaintiff's right to privacy in his own home/apartment was violated, and he was discriminated on the basis of his race by Defendant, landlord. Defendants treated Plaintiff in an unfair and discriminatory manner solely because his race was African American.

56. The above referenced damages were the direct result and proximate result of the violation of Plaintiff's constitutional rights. As a result of Defendant's actions, plaintiff will continue to suffer damages. These damages are a direct and proximate result of the actions of the Defendants with no contributory negligence of the Plaintiff.

## **COUNT TEN - DAMAGES**

57. Count ten of this complaint adopts and incorporates by reference al allegations set forth above.

**WHEREFORE**, Plaintiff prays for judgment on all counts in their favor and against the defendants and request the following:

a. Award of damages for pain and suffering;

b. All psychological care and treatment;

c. Damages for all injuries;

d. That Plaintiff be awarded a sum which will adequately and full compensate Plaintiff for their full damages including embarrassment, humiliation, mental anguish, and all consequent damages, losses and injuries caused by Defendants acts;

e. That this Court assesses punitive damages against the Defendants in such sum as will properly punish said Defendants and make an example of their conduct; and

f. That plaintiff be awarded against Defendants the cost of litigation, reasonable attorneys fees and all such further relief as this Court may deem just and proper. Based on the counts herein, in an amount to be determined at trail but believed to be Twenty Million dollars in compensatory damages.

## REQUEST FOR A JURY TRIAL

Wherefore, Plaintiff hereby demands a jury trial.

Respectfully submitted,

Joseph Wade

Joseph Wade, *Pro Se*